IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 18, 2012

## STATE OF TENNESSEE v. LINDSEY BUTLER

**Appeal from the Circuit Court for Maury County**
**No. 16849, 16913, 16914    Robert L. Jones, Judge**

---

**No. M2011-02193-CCA-R3-CD - Filed November 13, 2012**

---

The Defendant, Lindsey Butler, appeals the Maury County Circuit Court's order revoking his probation for possession of cocaine with the intent to sell and two counts of possession of marijuana with the intent to sell, and ordering the remainder of his effective eight-year sentence into execution. On appeal, the Defendant contends that the trial court (1) abused its discretion in revoking his probation and (2) failed to exercise "separate discretion" in determining his punishment. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and D. KELLY THOMAS, JR., JJ., joined.

Robert C. Richardson, Jr., Columbia, Tennessee, for the appellant, Lindsey Butler.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; T. Michel Bottoms, District Attorney General; and Daniel J. Runde, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the revocation hearing, Probation Officer Lorannda Borja testified that she had supervised the Defendant since May or June 2010, and that the Defendant was sentenced to eight years' probation for various drug convictions in June 2007, which was consecutive to another conviction, giving the Defendant an effective thirteen-year sentence. She said that with regard to the consecutive sentence not at issue in the instant revocation proceeding, the Defendant's probation was revoked, and he was sentenced to confinement. She said she filed the instant probation violation report because the Defendant was arrested on new criminal charges, never presented proof of employment, and possessed narcotics. She said the grand

jury indicted the Defendant for possession of marijuana, sale of marijuana, and possession of drug paraphernalia.

Ms. Borja testified that the Defendant did not provide her proof of employment, that she did not know how the Defendant supported himself while on probation, and that the Defendant did not present proof of employment to his previous probation officer. She said the Defendant failed to pay his probation fees, although she did not know the amount of the arrearage. She agreed the Defendant's failure to pay fees was not a basis for the revocation report.

On cross-examination, Ms. Borja testified that this was the Defendant's first probation violation since his release from prison, although the Defendant served time in prison for violating his previous probation sentence. She said the Defendant reported to her bimonthly. She said the Defendant told her that he was looking for work. She disagreed that the Defendant's felony conviction made it difficult for him to find work but agreed that the Defendant made a few payments toward his fees. She said the Defendant was obligated to follow twelve of the fourteen standard probation rules.

Ms. Borja testified that the Defendant had been incarcerated on the instant probation violation warrant for about six months. She agreed that the Defendant entered a residential alcohol and drug rehabilitation program on February 15, 2010, and that the Defendant successfully completed the program on May 15, 2010.

Columbia Police Officer Jason Dark testified that he worked in the narcotics unit, that he investigated the Defendant, and that as a result of his investigation, the grand jury returned a three-count indictment for possession of a controlled substance less than one-half ounce, sale of more than one-half ounce of marijuana, and possession of drug paraphernalia. He agreed two of the charges were dismissed, leaving only the sale of marijuana charge. He said Karissa Taylor, an informant, told him the Defendant was selling marijuana. He said that on October 26, 2010, Ms. Taylor called the Defendant and asked to buy one-half ounce of marijuana and that the Defendant called back and told Ms. Taylor he would come to her home.

Officer Dark testified that Ms. Taylor and her car were searched for illegal narcotics, drug paraphernalia, and money before meeting the Defendant and that he gave her money to buy the marijuana and a hidden camera. He followed Ms. Taylor, staying one-quarter mile behind her. He said the Defendant was waiting when Ms. Taylor arrived home. He said that after the Defendant left, he met Ms. Taylor, who gave him the substance she received from the Defendant. He said Ms. Taylor did not have the buy money. He said an analysis of the substance showed it was 12.5 grams of marijuana, slightly less than one-half ounce.

On cross-examination, Officer Dark testified that he did not know Ms. Taylor had a personal relationship with the Defendant. He said that although he knew the police found marijuana in Ms. Taylor's car during a traffic stop and knew she used marijuana, he did not know the police were "holding that over her" to get her to cooperate. He said the money used to buy the marijuana included three twenty dollar bills. He said he personally searched Ms. Taylor's purse and car and had her empty her pockets before giving her the buy money. He denied searching Ms. Taylor's clothing, undergarments, or socks and shoes. He did not use a police dog during the search. He said it was possible Ms. Taylor had marijuana in her possession.

Officer Dark testified that he did not have continuous sight of Ms. Taylor after he gave her the buy money. He agreed Ms. Taylor made a phone call while driving home to meet the Defendant. He denied seeing the exchange between Ms. Taylor and the Defendant. He said Ms. Taylor was told to ask the Defendant to turn on a light inside the car where the sale occurred in order to get the Defendant's face on camera. He said that Ms. Taylor asked the Defendant to turn on a light for her to see the marijuana and that the Defendant stated, "[T]his is the same stuff you've been buying." He said he concluded that the Defendant sold Ms. Taylor marijuana. He said the video recording did not show the marijuana being handed to Ms. Taylor. He said that although the recording did not show a clear picture of the Defendant, he was familiar with the Defendant and knew his voice. He said that after the transaction, Ms. Taylor said she had to "put her money up" and entered her home. He denied searching Ms. Taylor after she gave him the marijuana.

On redirect examination, Officer Dark testified that the events of October 26, 2010, were not the only alleged illegal drug sales by the Defendant, although the Defendant had not been charged with a crime. He agreed the police previously obtained a searched warrant and found marijuana linked to the Defendant. He said that he recognized the Defendant from the video recording made on October 26 and that he had known the Defendant for five years. He said that he helped execute previous search warrants involving the Defendant and that he arrested the Defendant previously after finding marijuana in the Defendant's sock. He said that he had been in the same room with the Defendant three or four times and that he had "a lengthy history" with the Defendant.

Karissa Taylor testified that she had known the Defendant for three or four years and that they were friends. She denied having a serious girlfriend/boyfriend relationship with him. She said she volunteered to be a police informant but denied volunteering because of her arrest for possession of marijuana. She said she was paid a fixed amount for each drug transaction. She said that if she testified, she received $125 and that she received $60 if she did not testify.

Ms. Taylor testified that on October 26, 2010, she worked as a police informant and that she called the Defendant to buy marijuana. She said the Defendant told her that he would meet her at her home. She said that after she agreed to meet the Defendant at her home, the police searched her pants pockets, purse, and car and gave her buy money and a recording device. She denied hiding marijuana in her undergarments or in her car.

Ms. Taylor testified that she thought the Defendant suggested meeting at her home because he was in the area. She said she pulled her car into her driveway, got out of her car, and walked to the driver's side door of the Defendant's car. She said that the Defendant did not talk much, that she asked him to turn on the light inside the car, that the Defendant gave her the marijuana, and that she gave the Defendant the money. She said she walked away from the Defendant's car and entered her home. She said that after the Defendant left, she left to meet Officer Dark. She denied having "bad blood" with the Defendant.

Ms. Taylor testified that she knew what marijuana looked like before October 26, 2010, and that the Defendant gave her marijuana. She said that she told the Defendant she was going into her home to put away her money. She said, though, she was referring to a social security check. She said she received social security benefits after having several surgeries and for depression. She said she had her social security money in her purse when she met the Defendant. She said the money she gave the Defendant came from Officer Dark.

The video recording showed Ms. Taylor standing at the driver's side door of a car. The driver was sitting inside the car with the window down. Ms. Taylor asked the driver to turn on a light to see the marijuana, and the driver said, "It's the same s--- you've been smoking." Although the driver's face was not visible, the recording showed that the driver was an African-American man who wore eyeglasses. A Caucasian female was in the passenger seat. After Ms. Taylor exchanged money for marijuana, she told the driver, "Lindsey, I gotta go." The driver responded, "Oh, okay." Ms. Taylor walked away from the car, went inside her home, and left a few minutes later to meet Officer Dark.

On cross-examination, Ms. Taylor testified that she previously had a sexual relationship with the Defendant and that she and the Defendant wrote letters to one another after the Defendant was arrested. She identified an April 8, 2011 letter that she wrote to the Defendant and a small Christian pamphlet that she mailed the Defendant on April 23, 2011. She agreed that she offered to help the Defendant in the April 8 letter but denied that she truly wanted to help him. She said she wrote the letter because the Defendant threatened her. She denied knowing why she told the police about the Defendant.

-4-

Ms. Taylor testified that the police stopped her car for a broken taillight and that the police found marijuana in her car. She said the Defendant was not in her car during the stop. She said the police stopped her car and found marijuana after October 26, 2010. She said the police paid her either $125 or $60 on October 26. She said she knew from the beginning she was going to testify against the Defendant.

Ms. Taylor testified that she had her social security money in her purse when Officer Dark searched her purse before giving her the buy money but that she did not recall his searching her wallet. She said she only had a portion of her social security money in her purse on October 26. She said she knew the passenger in the Defendant's car as Amy, who lived on Nolan Drive. She denied being jealous of the Defendant's relationship with Amy.

On redirect examination, Ms. Taylor testified that she began working for the police before she was stopped for a broken taillight. She said she bought the marijuana the police found in her car from the Defendant. She said that on October 26, 2010, she gave the Defendant the buy money from her pants pocket in exchange for the marijuana. She said she wrote the Defendant because she did not want him to think she "snitched" on him due to the rumors she heard from three of the Defendant's female customers.

Upon examination by the trial court, Ms. Taylor testified that she heard rumors around the same time she sent the Defendant mail. She said her social security money had been in her purse since she cashed her check on October 3, 2010. She said that the check came in the mail, that she deposited the check into her checking account, and that she had about $100 with her on October 26. She said the police paid her after the transaction on October 26. She said that although she was not sure, she thought she saw the Defendant earlier on October 26 at the Defendant's ex-wife's apartment. She said she worked as an informant to get drugs and the Defendant off the street and to supplement her income. She denied the police paid her anything other than the sixty dollars for her work.

The trial court concluded that the State established by a preponderance of the evidence that the Defendant sold marijuana to Ms. Taylor on October 26, 2010 . The court believed that there was a "casual exchange" because of the previous intimate relationship between the Defendant and Ms. Taylor, which would only require "a slap on the wrist" for a first time offender. The court found, though, that the Defendant was not a first time offender. The trial court noted the Defendant's previous drug-related convictions resulted in an effective thirteen-year sentence.

The trial court stated that although it could not identify the Defendant as the driver in the video recording, testimony of people who knew the Defendant supported such a finding. The court noted that the Defendant violated a previous probation sentence and

found that the Defendant was "not a worthy candidate for probation." With regard to Ms. Taylor, the court found that there were "scores" of people in Maury County working as police informants because they needed money or needed to resolve legal issues. The court stated that the Defendant's conduct on October 26 was "evidence of his continuing misconduct and his unworthiness to be on probation." The court found that the Defendant did not have a "visible means of support, except dealing drugs." The trial court revoked the Defendant's probation and ordered the remainder of his sentence into execution.

**I**

The Defendant contends that the evidence is insufficient to revoke his probation. He argues that the record fails to show substantial evidence supporting the revocation. The State responds that the evidence is sufficient to revoke the Defendant's probation. We agree with the State.

A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2010). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing Carver v. State, 570 S.W.2d 872 (Tenn. Crim. App. 1978)). If a trial court revokes a defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2010); see State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999). The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. See State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981). In order for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001).

We note that at the revocation hearing, defense counsel told the trial court that "there's no doubt there's grounds for a violation. But the question is, what is [the Defendant] going to get as punishment?" In any event, the record contains sufficient proof that the Defendant violated the conditions of his probation. The police, with the help of Ms. Taylor, recorded the Defendant's giving Ms. Taylor marijuana in exchange for money. Officer Dark identified the Defendant on the video recording as the Defendant. Officer Dark knew the Defendant because he had arrested the Defendant previously, had helped execute search warrants involving the Defendant, and had been in the same room with the Defendant at least three times. The trial court credited the officer's testimony. An analysis of the substance given to Ms. Taylor showed it was marijuana. This constituted sufficient

proof to support the court's finding that the Defendant violated his probation. The record reflects that the trial court properly found that the Defendant violated his probation and that it exercised proper discretion in revoking the Defendant's probation and ordering the Defendant to serve the remainder of his sentence.

## II

The Defendant contends that the trial court failed to use a separate exercise of discretion in determining his punishment. He argues that the trial court failed to consider any alternative to full probation revocation. The State responds that the trial court properly ordered the Defendant's sentence into execution. We agree with the State.

After the trial court revoked the Defendant's probation, it had the authority to order the Defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-310, -311(e)(1)(A) (2010). In any event, the trial court considered the Defendant's suitability for continuing probation. The court discussed the Defendant's first drug-related convictions in 2007 and his receiving probation, the Defendant's violating his probation less than one year later, and his serving time in prison. The court also noted that after the Defendant was released from prison to probation, the Defendant was arrested on the underlying drug offenses prompting the instant probation revocation. The court noted that the Defendant's conduct on October 26 was "evidence of his continuing misconduct and his unworthiness to be on probation." The record reflects that the trial court exercised proper discretion in ordering the Defendant to serve the remainder of his sentence. The Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE